**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBRA LYNN EMENHIZER,** | : | **Civil No.  1:16-CV-326** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

In this case we are called upon to review a decision by a Social Security Administrative Law Judge (ALJ) that engaged in a fundamental form of legal and factual analysis that is commonplace in Social Security appeals:  the weighing of competing medical evidence.  In the instant case, the ALJ reviewed the medical opinion of the plaintiff's treating physician, which concluded that Ms. Emenhizer was disabled, and the opinions of two state agency medical sources, who found that she retained the residual functional capacity to perform a range of light work.

The ALJ found that Ms. Emenhizer could perform a limited scope of light work, and concluded that she was not disabled.  (Tr. 32-3.)  In reaching this conclusion the ALJ carefully considered the opinion of Ms. Emenhizer's treating doctor, but ultimately found that this opinion was unpersuasive for at least five

1

reasons since it was "[1] not supported by the doctor's own clinical findings, [2] [or] with the findings of other physicians, [3][or] with the results of MRI studies, [4] [or] with the claimant's relatively conservative course of treatment . . . , [5][or] with the claimant's activities of daily living, such as watching television, reading romance novels, cooking, driving herself to her psychologist's office, and caring for her 17-year-old son independently." (Tr. 29.)

Given the deferential standard of review that applies to Social Security Appeals, which calls upon us to simply determine whether substantial evidence supports the ALJ's findings, we conclude that substantial evidence does exist in this case which justified the ALJ's evaluation of this medical opinion evidence, and the residual functional capacity determination of Emenhizer which flowed from that assessment of the medical evidence. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner in this case.

## II.      Statement of Facts and of the Case

On November 6, 2012, Debra Lynn Emenhizer applied for disability insurance benefits and supplemental security income  under  Titles II or XVI of the Social Security Act (Act).  42 U.S.C. §§ 401-434, 1381-1383f, alleging that she

had become disabled in July of 2010[1] due to degenerative disc disease, bone spurs in her back, leg problems, high blood pressure, migraines, anxiety, and depression. (Tr. 79.) Emenhizer was forty-seven years old on May 10, 2012, at the time of her amended alleged onset of disability, and was forty-nine years old at the time of the ALJ's October 9, 2014 decision denying her application for benefits.   As such, Emenhizer was considered a "younger person" under Social Security Regulations. See 20 C.F.R. §§ 404.1563, 416.963.  Emenhizer had a high school education, and an employment history spanning from 2002 through 2012 in a number of fields including waitressing, housekeeping, and working as a cashier and stock clerk. (Tr. 274-75.)

Emenhizer's disability application was initially denied on July 19, 2013, and she sought a hearing to contest this denial on August 5, 2013.  (Tr. 15.)  This hearing was conducted by an ALJ on August 8, 2014.  (Tr. 39-86.)  At this hearing, the ALJ heard testimony from Emenhizer and a vocational expert.  (Id.)  The ALJ also received and reviewed detailed medical records from multiple medical sources, (Tr. 337-641.), and had the benefit of at least three medical opinions, an

---

[1] Emenhizer had actually been employed for some period of time after the initial claimed onset of her disability in July 2010.  Emenhizer subsequently amended her application at the hearing before the ALJ to allege an onset date of May 2012.  (Tr. 15.)

opinion from a treating physician for Emenhizer, Dr. Carleton, (Tr. 518-19.), and two state agency medical sources, Dr. Fox and Dr. Ostrich. (Tr. 98-102.)

These medical sources reached markedly different conclusions regarding Emenhizer's capacity to perform work. For his part, Dr. Carleton opined that Emenhizer was experiencing a series of moderate, marked and extreme limitations in meeting the mental demands of the workplace. (Tr. 515-17.) Dr. Carleton also concluded that that due to spinal stenosis, COPD, hypertension, and migraines, Emenhizer would be limited to sitting 15 minutes at one time and 3 hours total, standing or walking 15 minutes at one time and 3 hours total, lifting or carrying up to 20 pounds occasionally and less than 10 pounds frequently, using her hands and fingers 30 percent of the workday, and using her arms 20 percent of the workday. (Tr. 518-19.) Dr. Carleton further stated that Emenhizer would need to recline or lie down in excess of typical work breaks and shift positions at will; take unscheduled breaks throughout the work day; and would likely be absent once or twice a month due to her impairments and treatment. (Id.) These findings strongly suggested that Emenhizer was fully disabled.

In contrast, two state agency medical experts, Dr. Fox and Dr. Ostrich, concluded that Emenhizer was capable of performing a limited scope of light work. Thus, Dr. Fox, a state agency physician, assessed Emenhizer's physical limitations,

4

and following a review of the medical evidence of record in May 2013 concluded that Emenhizer was physically capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours in an eight-hour workday; standing and walking for six hours in an eight-hour workday; and performing occasional postural activities; but should avoid concentrated exposure to temperature extremes or vibration.  (Tr. 98-100.)

Likewise, Timothy Ostrich, Psy. D, a state agency psychologist, reviewed the medical evidence of record in July 2013 and determined that Emenhizer was able to understand, retain, and follow simple job instructions, and perform simple, routine repetitive work in a stable environment.  (Tr. 100.)  Dr. Ostrich further concluded that Emenhizer would be able to carry out very short and simple instructions; make simple decisions, and sustain a work routine without special supervision; found that she would be able to maintain socially appropriate behavior, ask simple questions, and accept instruction; determined that she would be able to sustain an ordinary routine without special supervision; function in a production-oriented job requiring little independent decision making; and exercise appropriate judgments in the workplace.  (Tr. 100-02.)

These contrasting medical opinions rested upon a mixed medical record, albeit a record which provided significant factual support for the opinions of those

experts who opined that Emenhizer retained the residual functional capacity to perform some light work.  For example, objective medical testing done by a number of care-givers did not document the degree of impairment described by Emenhizer.  Thus, an MRI of Emenhizer's lumbar spine in September 2012 showed only mild to moderate lumbar spondylosis, increased degenerative disc disease at L2-L3, slightly increased disc protrusion at L3-L4, and mild diffuse disc protrusion at L5-S1, which was unchanged from a previous study in 2006.  (Tr. 479-80.)  Later, in March 2013, an examination by Jennifer Simmons, M.D., revealed a normal spine to palpation, no abnormal tension of the paraspinal muscles, and no appreciable scoliosis.  (Tr. 634.)  Likewise in June of 2014 a musculoskeletal examination showed that Emenhizer had a fluid range of motion of the cervical and thoracic spines, with only slight loss of range of motion of the lumbar spine.  (Tr. 609.)  A neurological examination, in turn, disclosed good motor strength without deficit, intact sensation, and no signs of upper motor neuron pathology.  (Tr. 609.)  Further, a review of an earlier MRI showed only some mild degeneration in the spine.  (Tr. 610.)

Further, observation of Emenhizer by various other medical professionals indicated that she retained some physical capabilities and had responded well to conservative medical treatment in the past.  For example, Emenhizer began

6

treatment with Upendra Thaker, M.D., a pain management specialist, in December 2012. (Tr. 401-04.)  At that time Emenhizer reported that she had been employed part-time as a waitress for two years.  (Tr.402.)  Emenhizer was prescribed pain medication, which she later reported was minimally helpful, (Tr. 401-04, 588.), and was treated with epidural steroid injections in September and October of 2013. (Tr. 583-84, 586-87, 588-89.)  This course of treatment reportedly yielded an 80% improvement in her lumbar pain.  (Tr. 584.)

In March of 2014 physical examinations of Emenhizer showed some tenderness in her spine, limited range of motion, and an equivocal straight leg-raising test on the right side.  (Tr. 555, 558, 584, 588.)  However, examination also revealed that Emenhizer experienced intact sensation, trace ankle, moderate tenderness in the heel, full (5/5) strength, and a normal gait (Tr. 555, 558, 584, 588.)  Based upon these findings, Dr. Thaker followed a conservative course of treatment for Emenhizer explaining to her that she was physically deconditioned and encouraging her to participate in mild physical activity and pursue weight reduction.  (Tr.555, 584.)

In June of 2014, Dr. Thaker referred Emenhizer to Dr. John Sefter, D.O., an orthopedist, to evaluate her lumbar pain.  (Tr. 608-11.)  Like Dr. Thaker, Dr. Sefter reached equivocal medical findings as to Emenhizer and prescribed a conservative

course of treatment. Thus, while Dr. Sefter noted that Emenhizer reported a fifteen-year history of back pain, he also found that she had undergone only conservative treatment measures, consisting of physical therapy, chiropractic manipulation, and pain injections. (Tr. 608.) A musculoskeletal examination revealed fluid range of motion, with only slight loss of range of motion of the lumbar spine and neurological examination revealed good motor strength without deficit, intact sensation, and no signs of upper motor neuron pathology. (Tr. 609.) Dr. Sefter, therefore, assessed Emenhizer with slight degenerative disc disease but no spinal instability or neurological deficit. (Tr. 610.) The doctor also concluded that surgery was "immensely" contraindicated for Emenhizer, continuing to endorse more conservative treatment methods. (Tr. 606-07.) Dr. Sefter also considered Emenhizer's MRI results to be, "actually quite normal," (Tr. 606-07.), and prescribed a modest treatment path for her, consisting of facet joint rather than epidural injections, weight loss, and smoking cessation. (Tr. 610.)

The treatment records of Emenhizer's primary care physician, Dr. Carleton, also presented a mixed picture regarding her health and degree of impairment, a picture that was not entirely consistent with the severe limitations that Dr. Carleton described in his expert report. Thus, while Dr. Carleton's treatment notes documented a variety of complaints by Emenhizer, (Tr. 496, 500, 503, and 504.),

those same records contained far more mundane and unremarkable medical findings, such as a normal cardiovascular examination, (Tr. 606.), no reported chest pain or shortness of breath, (Tr. 615.), and an assessment of moderate, persistent asthma that was stable on inhalers.  (Tr. 615.)

Furthermore, Emenhizer's reported activities of daily living were not completely consistent with a claim of full disability.   Thus, while Emenhizer reported disabling limitations, she also described in her activity reports that she was able to get ready for work while she was still working as a waitress following the submission of her disability application.  In addition, Emenhizer explained that she routinely took her medications; cleaned her house; cared for her son and her pets, and prepared complete meals three to four times per week.  (Tr. 283-85.) Emenhizer also reported that she performed household chores when she was not working, including folding laundry and matching socks.  (Tr. 285.)  Emenhizer acknowledged that she needed no help with her household chores (Tr.285.), and was able to drive, but did not often go out alone due to anxiety and panic attacks. (Tr. 286.)  According to Emenhizer, she shopped in stores for groceries; was able to manage money and pay bills; (Tr. 286.) and identified reading, watching television, playing computer games, and going to yard sales as her hobbies and past times. (Tr. 287.)

Emenhizer further reported that she had no difficulty paying attention, finishing what she started, following written or spoken instructions, or getting along with authority figures. (Tr. 288-89.) Emenhizer's benign and unremarkable description of these aspects of her mental and emotional state as it related to work performance was corroborated by reports from other medical professionals. For example, an October 2012 report from Kevin Parry, M.D, a neurologist, stated that Emenhizer had an appropriate mood, a normal attention span, and intact recent and remote memory. (Tr. 536.) Additionally, a June 2013, psychological assessment of Emenhizer by Dr. John Jubala concluded that Emenhizer had no limitations in her ability to understand, remember, or carry out instructions; no limitation in her ability to interact appropriately with coworkers or supervisors; a mild limitation in her ability to interact appropriately with the public, and a moderate limitation in her ability to respond appropriately to usual work situations or changes in a routine work setting. (Tr. 526.)

It was against this medical and factual backdrop that the ALJ reached a decision concerning Emenhizer's disability claims on October 9, 2014. (Tr. 12-33.) In this decision, the ALJ found that Emenhizer met the insured requirements of the Act, and at Step 2 of the five step sequential analysis process that applies to Social Security disability claims concluded that Emenhizer experienced the

10

following severe impairments:  degenerative disc disease of the lumbosacral spine with lumbar disc herniation, stenosis, lumbar spondylitis, and facet joint irritation with associated radiculopathy, chronic pain and hypoesthesia, fibromyalgia, obesity, hypertension, dyslipidemia, asthma, chronic obstructive pulmonary disease, depressive disorder, bipolar disorder, and anxiety/panic disorder.  (Tr. 17-18.)  At Steps 3 and 4 of this sequential analysis, the ALJ concluded that none of Emenhizer's impairments met a listing which would define her as *per se* disabled, (Tr. 19.), but also found that Emenhizer could not return to her past employment due to these impairments.  (Tr. 31.)

The ALJ then engaged in a lengthy and exhaustive analysis of the medical reports and opinion evidence.  (Tr. 22-31.)  At the conclusion of this thorough assessment the ALJ found that Emenhizer retained the residual functional capacity for unskilled, light work with occasional postural movements like balancing, kneeling, climbing, crouching, stooping, and crawling but with no exposure to temperature extremes, concentrated noxious fumes or gases, poor ventilation, humidity, wetness, unprotected heights, or dangerous machinery.  The ALJ further found that Emenhizer could work in a low-stress environment with few changes in the work setting with no fast pace work or production standards, only occasional contact with coworkers and supervisors, and no contact with the general public.

(Tr. 22.)  Given this residual functional capacity assessment, consistent with the hearing testimony of the vocational expert, the ALJ determined that there were positions available to Emenhizer in the national economy and denied her application for disability benefits.  (Tr. 33.)

In making this determination, the ALJ was required to evaluate the opinion testimony of the various medical sources.  On this score, the ALJ assigned greater weight to the opinions of Dr. Fox and Dr. Ostrich, concluding that those opinions were more consistent with the plaintiff's overall medical record, and with the clincial findings of other doctors.  (Tr. 30.)  The ALJ afforded less weight to the opinion of Emenhizer's treating physician, Dr. Carleton, observing that this opinion was less persuasive for at least five reasons since it was "[1] not supported by the doctor's own clinical findings, [2] [or] with the findings of other physicians, [3][or] with the results of MRI studies, [4] [or] with the claimant's relatively conservative course of treatment . . . , [5][or] with the claimant's activities of daily living, such as watching television, reading romance novels, cooking, driving herself to her psychologist's office, and caring for her 17-year-old son independently."  (Tr. 29.)

This appeal followed.  (Doc. 1.)  On appeal, Emenhizer attacked the ALJ's weighing of the medical opinion evidence and the residual functional capacity

assessment which flowed from this medical evidence assessment. The parties have fully briefed these issues, (Docs. 15-17.), and this case is ripe for resolution. For the reasons set forth below, we find, under the deferential standard of review which applies to Social Security appeals, that substantial evidence supports the findings of the ALJ. Therefore, we affirm that finding.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of This Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. <u>See</u> 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.

Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."  Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."  Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).  The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B.    Initial Burdens of Proof , Persuasion and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §416.920(a).   Under this process, the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education,

work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age,

16

education, work experience and RFC. 20 C.F.R. §416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999).

## C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence</u>

The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do

despite impairments(s), and [a claimant's] physical or mental restrictions.   20 C.F.R. §404.1527(a)(2).   Regardless of its source, the ALJ is required to evaluate every medical opinion received.   20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c).   "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."   SSR 96-6p, 1996 WL 374180 at *2.   Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight.   See 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources...");   20 C.F.R. §404.1502 (defining treating source).   Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight.   20 C.F.R. §§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where

applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators.  See SSR 96-5p, 1996 WL 374183 at *4.  As such, they do not express opinions; they make findings of fact that become part of the determination.  Id.  However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence.  As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions.  SSR 96-5p, 1996 WL 374183 at *6.  Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record."  SSR 96-6p, 1996 WL 374180 at *2.  In appropriate circumstances, opinions from nonexamining State agency

19

medical consultants may be entitled to greater weight than the opinions of treating or examining sources.  Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a Social Security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. See 20 C.F.R. §404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Oftentimes, as in this case, an ALJ must evaluate a number of medical opinions tendered by both treating and non-treating sources.  Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets.  First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."  Chandler v. Comm'r of  Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).  Thus, "[w]here, . . . , the opinion of a treating

20

physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions deserve greater weight.

In making this assessment of medical opinion evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion.  See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011).  It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions.  See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

It is equally clear, however, that an ALJ may not unilaterally reject *all* medical opinions in favor of the ALJ's own subjective impressions.  Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016) citing Thanh Tam Vo v. Colvin, No. 1:14–CV–00541–GBC, 2015 WL 5514981, at *4 (M.D.Pa. Sept. 15, 2015)

(remanding where ALJ completely rejected all medical opinions, even the one that supported the ALJ's RFC). Thus,

> In a slew of decisions, the Third Circuit holds that no reasonable mind would find the ALJ's evidence to be adequate when the ALJ rejects every medical opinion in the record with only lay reinterpretation of medical evidence. See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Doak v. Heckler, 790 F.2d 26, 29–30 (3d Cir.1986); Ferguson v. Schweiker, 765 F.2d 31, 37, 36–37 (3d Cir.1985); Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir.1983); Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir.1983); Kelly v. R.R. Ret. Bd., 625 F.2d 486, 494 (3d Cir.1980); Rossi v. Califano, 602 F.2d 55, 58–59, (3d Cir.1979); Fowler v. Califano, 596 F.2d 600, 603 (3d Cir.1979); Gober v. Matthews, 574 F.2d 772, 777 (3d Cir.1978). These cases also recognize the special deference owed to medical opinions from treating sources ("treating source rule").

> Burns v. Colvin, 156 F. Supp. 3d 579, 583 (M.D. Pa. 2016).

In short, "rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant. See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir.1986) ('No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.')." Ennis v. Astrue, No. 4:11-CV-01788, 2013 WL 74375, at *6 (M.D. Pa. Jan. 4, 2013)(Munley, J.)

In determining the weight to be given to a treating source opinion, it is also well-settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008).  Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005).  Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion."  Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

### D.   Substantial   Evidence   Supports   the   ALJ's   Credibility Determinations and Residual Functional Capacity Assessment

In this case our review of this decision is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). In this context, substantial evidence "does not mean a large or considerable amount

of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988), and substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).

Guided by this deferential standard of review, we also recognize that, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000).  Therefore, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.

In the instant case, the thorough opinion of the ALJ meets all of the benchmarks prescribed by law.  In that decision, the ALJ discounted the medical opinion of a treating source, Dr. Carleton, but provided a comprehensive analysis of the reasons for affording little weight to that treating source opinion.  In fact, the ALJ documented five separate reasons why Dr. Carleton's opinion warranted less

24

weight than the judgment of other medical professionals, citing the fact that it was:
"[1] not supported by the doctor's own clinical findings, [2] [or] with the findings
of other physicians, [3][or] with the results of MRI studies, [4] [or] with the
claimant's relatively conservative course of treatment . . . , [5][or] with the
claimant's activities of daily living, such as watching television, reading romance
novels, cooking, driving herself to her psychologist's office, and caring for her 17-
year-old son independently." (Tr. 29.)

Our independent review of the ALJ's careful treatment of the medical
evidence, and that underlying medical record itself, discloses that these five
independent grounds cited by the ALJ for discounting Dr. Carleton's opinion were
each supported by "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565
(1988). As such, each of these findings was sustained by substantial evidence
which was fully articulated by the ALJ in the decision that was rendered in this
case. We also conclude that the ALJ's decision, read as a whole, provided a
complete treatment of the medical evidence, and that there was no impermissible
selectivity or "cherry picking" in the ALJ's treatment of this evidence. Thus, the
evidence taken as a whole supported a finding that Emenhizer suffered from

multiple impairments, but nonetheless retained the capacity to perform a limited range of light work.

Given the standard of review which applies to appeals of Social Security disability determinations, this finding that substantial evidence supported the ALJ's decision, calls for the affirmance of this decision. Therefore, we affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

An appropriate order follows.

Submitted this 23d day of February, 2017.


_s/Martin C. Carlson_____
Martin C. Carlson
United States Magistrate Judge